IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-01033-RBJ

SUZANNE ELAINE MCKINNEY,

    Plaintiff,

v.

UNITED STATES,
VERIZON, INC., a U.S. Corporation,
MEMORIAL HOSPITAL, a subsidiary of UCHealth, a U.S. Corporation,

    Defendants.

ORDER

This order addresses (1) defendants' motions to dismiss [ECF Nos. 8, 10, 11]; (2) plaintiff's combined response to defendant United States' motion to dismiss and motion for summary judgment [ECF No. 12]; (3) plaintiff's combined response to Memorial Hospital's motion to dismiss and motion for review of certification requirement and leave to amend [ECF No. 13]; (4) defendant United States' motion to strike plaintiff's motion for summary judgment [ECF No. 16]; (5) defendant Memorial Hospital's motion to strike plaintiff's motion for review of certification requirement and leave to amend [ECF No. 18]; (6) plaintiff's motion for summary judgment against defendant United States [ECF No. 22]; (7) plaintiff's motion for sanctions against the attorney for defendant United States [ECF No. 27]; (8) defendant United States' motion to stay proceedings [ECF No. 30]; (9) plaintiff's motion to restrict public access

to or redact portions of court documents and exhibits [ECF No. 32]; (10) plaintiff's motion for correction [ECF No. 37]; and (11) defendant United States' motion for extension of time [ECF No. 40]. The Court apologizes for its delay in addressing these motions. The motions to dismiss are GRANTED, and all remaining motions are MOOT.

## BACKGROUND

A.  **Factual Allegations.**[1]

Ms. McKinney is a former employee of the Veterans Benefits Administration (VBA) in Washington, D.C. She alleges that she discovered evidence of fraud at the VBA and reported it to her supervisors, prompting retaliation. As a result, Ms. McKinney was forced to resign in October 2013. But this case is not about the VBA's alleged retaliation against Ms. McKinney. Instead, this case picks up after she moved back to Colorado and began searching for a new job.

According to Ms. McKinney, VBA has orchestrated a nationwide conspiracy to harass her and prevent her from securing a new position. She claims an unknown assailant with connections to VBA shot her in the head, leaving a palpable entry and exit wound in her skull. ECF No. 1 at ¶¶ 31–32. She also contends that VBA is committing ongoing tortious interference with her employment, including: "tracking through G.P.S., interference with versioning of documents through administrative accounts, removing word-processing corrections, and interception of Plaintiff's emails and phone calls/texts." *Id.* at ¶ 24. Her allegations continue:

> V.B.A. employees have asked various social networks for their cooperation in tracking and harassing Plaintiff . . . . In order to gain cooperation from these various social networks, V.B.A. employees have generated slander and libel in order to mislead these social networks into thinking they are furthering the

---

[1] These facts are drawn from the Complaint. ECF No. 1. For the purpose of resolving these motions to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

> individual social network's particular cause. (As an example, anti-abortion networks have been told variously that either: 1) Plaintiff has had an abortion; or 2) Plaintiff is an abortion doctor; Plaintiff is an illegal alien who lacks "green card" status and does not speak English.) V.B.A. employees have monitored Plaintiff's phone calls and texts and forwarded the content to social network members, asking that they use specific nouns/names from those texts while engaging in loud conversation near Plaintiff.

*Id.* at ¶ 45–47. Last, she claims VBA employees have been "pretending to be family members, and . . . accusing her of many unsolved or unclosed crimes. Thereby, V.B.A. employees gained the unknowing support of law enforcement in their efforts to defame Plaintiff and keep her from getting support from law enforcement and other agencies." *Id.* at ¶ 59.

Ms. McKinney believes Memorial Hospital and Verizon are in on this supposed conspiracy. When she went to Memorial Hospital for an x-ray of her "readily apparent" bullet wound, the nurse allegedly "intentionally read[] fraudulent x-ray results to Plaintiff," preventing her from receiving necessary treatment. *Id.* at ¶¶ 32, 39. Meanwhile, Verizon has allegedly failed to report to law enforcement VBA's interference with her phone calls and text messages, and instead raised her phone bill. *Id.* at ¶¶ 51–52.

### B. **Procedural History.**

On March 8, 2016 Ms. McKinney filed a substantially similar suit *in forma pauperis* in this Court. *See* Complaint, *McKinney v. U.S. Dep't of Veterans' Affairs* et al., No. 16-cv-00569-LTB (D. Colo. April 22, 2016), ECF No. 1. Judge Babcock dismissed the complaint with prejudice because he concluded that Ms. McKinney's claims "rest on 'fantastic or delusional scenarios' whose factual contentions 'rise to the level of the irrational or the wholly incredible.'" Order of Dismissal at 6, *McKinney*, No. 16-cv-00569-LTB, ECF No. 12 (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). In the

3

alternative, he dismissed the case without prejudice because Ms. McKinney failed to comply with a court order that she submit her complaint on the current court-approved form as required by local court rules. *Id.* at 7.

Ms. McKinney then filed this case on May 6, 2016, alleging tortious interference with employment, personal injury, defamation, intentional infliction of emotional distress, and civil conspiracy, and requesting punitive damages. ECF No. 1. On August 15, 2016 the United States submitted a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 8. Memorial Hospital filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) on August 23, 2016. ECF No. 10. Verizon likewise filed a motion to dismiss on August 23, 2016 under the doctrine of claim preclusion based on Judge Babcock's dismissal of Ms. McKinney's first case. ECF No. 11.

A flurry of motions has followed. On August 30, 2016 Ms. McKinney submitted a combined response to the United States' motion to dismiss and a motion for summary judgment for her slander and libel claims. ECF No. 12. She filed her responses to Memorial Hospital and Verizon's motions to dismiss on September 9, 2016. ECF Nos. 13, 14.

On September 16, 2016 the United States submitted a reply brief and filed a motion to strike Ms. McKinney's motion for summary judgment because she included it in her response brief in violation of this Court's rules. ECF Nos. 15, 16. On September 23, 2016 Memorial Hospital submitted a motion to strike Ms. McKinney's request for review of the certification requirement implicated by her claims and leave to amend contained in her response to Memorial Hospital's motion to dismiss, alleging that this combined filing also violates this Court's practice rules. ECF No. 18.

On September 26, 2016 Ms. McKinney submitted a response to the United States' motion to strike admitting error and advancing other arguments, and filed a separate motion for summary judgment on her slander and libel claims. ECF Nos. 21, 22. She filed a motion for sanctions against counsel for the United States on October 18, 2016. ECF No. 27. She also filed a motion to restrict public access to or, in the alternative, redact portions of court documents and exhibits on October 21, 2016. ECF No. 32.

The United States filed a motion for an extension of time to respond to plaintiff's motion for summary judgment on October 20, 2016, and the Court granted this motion the next day. ECF Nos. 28, 29. Around the time that the Court issued its order, however, Ms. McKinney filed a motion for default judgment against the United States for failure to timely respond to her motion for summary judgment. ECF No. 31. The Clerk of Court properly denied this request because the motion for an extension of time was granted. ECF No. 33. Notwithstanding the Court's ruling, Ms. McKinney submitted a response brief on October 24, 2016 urging denial of the United States' motion. ECF No. 34. She later submitted a motion for correction requesting that the Court enter a date certain in its order granting the United States' enlargement of time. ECF No. 37.

The United States submitted a motion to stay proceedings and vacate the scheduling conference on October 21, 2016. ECF No. 30. On November 10, 2016 the United States filed a motion for extension of time to respond to plaintiff's motion for sanctions and to respond to plaintiff's motion for correction. ECF No. 40. On November 18, 2016 the parties attended a scheduling conference, mooting the United States' request to vacate the setting.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). There is a presumption that a cause of action lies outside a federal court's limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (quoting *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014)). Accordingly, Ms. McKinney bears the burden of establishing jurisdiction here.

A motion to dismiss under Rule 12(b)(1) can either "(1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). Where, as here, there is a facial attack on the basis for jurisdiction, the Court must consider only the allegations on the face of the complaint, taken as true and viewed in the light most favorable to the plaintiffs. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "Mere conclusory allegations of jurisdiction are not enough." *U.S. ex rel. Hafter D.O.v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210

(10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

Although Ms. McKinney brings this action pro se, she is not entitled to have her filings construed liberally because she is a trained attorney. *See Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007). Nonetheless, in an abundance of caution, the Court will construe her Complaint liberally because she is not licensed to practice in this Court. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court will not serve as an advocate for a pro se litigant. *Hall*, 935 F.2d at 1110.

## ANALYSIS

Defendants seek dismissal of Ms. McKinney's complaint. In particular, the United States argues that the Federal Tort Claims Act's (FTCA) waiver of sovereign immunity does not cover her claims, and that she does not plausibly allege facts sufficient to sustain her claims. Memorial Hospital contends that it cannot be held vicariously liable for the alleged intentional actions of its employees and, in any event, that Colorado law requires a certificate of review before Ms. McKinney may bring her claims against the hospital. Verizon alone argues that Ms. McKinney is precluded from bringing her case following Judge Babcock's dismissal of her substantially

similar claims brought *in forma pauperis*. The Court will address the legal sufficiency of Ms. McKinney's claims against each defendant in turn.[2]

### A. The United States.

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . ." *United States v. Dalm*, 494 U.S. 596, 608 (1990).

> The FTCA generally waives sovereign immunity in suits against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (2012). However, this waiver is subject to a number of enumerated exceptions. *See id.* § 2680. The exceptions in section 2680(h) bar all but one of Ms. McKinney's claims, which fails for other reasons.

Ms. McKinney misreads the section 2680(h) exceptions to the United States' waiver of sovereign immunity as applying *only* to certain claims arising out of acts or omissions of federal investigative or law enforcement officers, and thus not precluding her claims. The statutory language is confusing, but this reading is incorrect. The "law enforcement proviso," as Ms. McKinney calls it, is a carve out from the section 2680(h) exceptions. Restated without the double negative, section 2680(h) bars suit *unless* a claim is based on certain law enforcement actions. *See Millbrook v. United States*, 133 S. Ct. 1441, 1442 (2013) ("[T]he Federal Tort

---

[2] The United States believes that Judge Babcock's dismissal under the unique provisions of the federal *in forma pauperis* statute may not have claim preclusive effect here because Ms. McKinney has paid the filing fee in this case. *See* ECF No. 8 at 3 n.5 (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Cedrins v. USCIS*, 383 F. App'x 811, 812 (10th Cir. 2010)). Verizon makes a persuasive argument that Congress's 1996 amendments to the statute eliminated this procedural quirk, but the Court need not resolve this open question of law because Ms. McKinney has failed to state a claim upon which relief could be granted. Similarly, the Court need not address Memorial Hospital's argument that Ms. McKinney must obtain a certificate of review before her claims can proceed against the hospital because her claims would warrant dismissal even if she had obtained a certificate of review.

Claims Act . . . waives the Government's sovereign immunity from tort suits, including those based on certain intentional torts committed by federal law enforcement officers."). Consequently, the section 2680(h) exceptions to the United States' waiver of sovereign immunity apply with full force here.

First, the FTCA denies federal courts jurisdiction over claims involving "interference with contract rights." 28 U.S.C. § 2680(h). This provision covers allegations of tortious interference with employment. *Aviles v. Lutz*, 887 F.2d 1046, 1049 (10th Cir. 1989) (finding the "allegation that government attorneys interfered with [plaintiff's] right to contract for government employment" barred by section 2680(h)); *accord U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1216 (D.C. Cir. 1993); *see also* Restatement (First) of Torts § 766 (1939) (identifying interference with business relations as a type of interference with contract rights).

Second, the FTCA precludes claims arising out of battery. 28 U.S.C. § 2680(h). Therefore, this Court also does not have jurisdiction to hear Ms. McKinney's allegation that she has been shot through the head "as a direct and proximate result of V.B.A. employees attempting to silence [her]," or that she "is losing sight in her right eye" due to "V.B.A. employees tracking [her] through the Global Positioning Satellite system." ECF No. 1 at ¶¶ 31, 40.

Third, the FTCA does not authorize federal courts to hear claims arising out of slander or libel against the United States. 28 U.S.C. § 2680(h). Slander and libel are the equivalent of defamation. *Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992). Therefore, Ms. McKinney may not bring her claims of slander, libel, or defamation against the United States. Ms. McKinney's intentional infliction of emotional distress claim is similarly barred because it arises out of her slander, libel, and defamation causes of action. *See* ECF No. 1 at ¶ 54 ("[A]s a

direct and proximate result of V.B.A. employees' slander, defamation and libel, Plaintiff has suffered severe emotional distress . . . ."").

Lastly, while a claim of civil conspiracy can be brought against the United States under the FTCA, Ms. McKinney has failed to plead a valid claim. In Colorado a civil conspiracy claim requires proof of five elements:

> [T]here must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

*Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). Here Ms. McKinney alleged a civil conspiracy between "V.B.A. employees" and "their employer." ECF No. 1 at ¶ 57. The United States is the only proper defendant in an FTCA action, and the FTCA treats the United States as a singular individual. *See* 28 U.S.C. § 1346(b); *Bowling v. United States*, 740 F. Supp. 2d 1240, 1250 (D. Kan. 2010). Accordingly, Ms. McKinney has failed to allege that two or more persons agreed on a course of action that resulted in an unlawful overt act.

Ms. McKinney's response to the United States' motion to dismiss counters that she "simply alleges that V.B.A. employees enlisted the aid of various social networks and misled local law enforcement personnel into aiding and abetting" the United States' allegedly wrongful actions, "whether knowing or otherwise." ECF No. 12 at 9. This claim is inadequate as well. Ms. McKinney's complaint describes the relationship between the United States and "various social networks" as follows: "In order to gain cooperation from these various social networks, V.B.A. employees have generated slander and libel in order to *mislead* these social networks into thinking they are furthering the individual social network's particular cause." ECF No. 1 at ¶ 46 (emphasis added). She similarly writes that the United States took steps to "gain[] the

*unknowing* support of law enforcement in [its] efforts to defame Plaintiff and keep her from getting support from law enforcement and other governmental agencies." *Id.* ¶ 59 (emphasis added). Thus, even if Ms. McKinney's claim of civil conspiracy is read to allege a conspiracy between the United States and other actors, she fails to claim that there was the necessary "meeting of the minds." Indeed, the logical inference of her allegations is that these social networks and law enforcement agencies were unwittingly manipulated and did not agree to advance any unlawful goal the United States allegedly had.

As a result, Ms. McKinney's claims against the United States must be dismissed.

### B.  Memorial Hospital.

Ms. McKinney's only claim against Memorial Hospital is her second claim for relief related to her experience at the hospital. She alleges that a nurse "intentionally read[] fraudulent x-ray results" to her and that an individual who may have been "an associate of Memorial" appeared at her bedside and urged her to "believe" what she was told about her x-ray. ECF No. 1 at ¶¶ 38–39. These actions allegedly prevented her from receiving necessary medical treatment. *Id.* at ¶ 32. Ms. McKinney does not name this nurse or the potential associate of Memorial in this suit, however, instead proceeding against the hospital on the theory of respondeat superior.

Under the doctrine of respondeat superior, an employer can be held vicariously liable for the tortious actions of its employees when they act within the scope of their employment. *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo. 2006). "However, if an employee commits an intentional tort solely for reasons that do not further his employer's

business or cannot be considered a natural incident of employment, the employer cannot be vicariously liable." *Moses v. Diocese of Colorado*, 863 P.2d 310, 330 n.27 (Colo. 1993).

Ms. McKinney claims that Memorial's nurse and alleged associate committed intentional tortious acts that caused her harm, but she does not suggest that these actions were undertaken to further Memorial's business or as a natural incident of employment. Viewing the facts alleged in the light most favorable to Ms. McKinney does not bridge this gap. Memorial Hospital is in the business of treating patients. The hospital does not stand to gain from its employees denying patients medical care, nor are fraudulent actions a natural incident of treating patients. Accordingly, Ms. McKinney has failed to state a claim against Memorial Hospital.

Ms. McKinney's arguments in response to Memorial's motion to dismiss overlook the respondeat superior issue. In particular, her claim that the doctrine of res ipsa loquitur might allow the inference that Memorial was negligent does nothing to make the hospital liable for the allegedly intentional actions of its staff. And even that theory is undermined by Ms. McKinney's assertion that she "is not proceeding under a legal theory of medical malpractice," ECF No. 15 at 5, since that would be the only plausible basis for invoking burden shifting under res ipsa.

Thus, Ms. McKinney's claims against Memorial Hospital must also be dismissed.

### C. Verizon.

Verizon makes a procedural argument in its motion to dismiss, but the merits of Ms. McKinney's claims against it are much easier to address. Only Ms. McKinney's third claim for relief mentions Verizon, alleging defamation, slander, libel, and intentional infliction of emotional distress arising from defamation. These claims are based entirely on the United States' alleged actions. Nevertheless, Ms. McKinney asserts these claims against Verizon as

well because it allegedly has not cooperated with Ms. McKinney's requests for the company to preserve evidence, investigate VBA's purported interference with her phone calls and text messages, and report VBA's activities to law enforcement, and because Ms. McKinney's "phone bill went up from $70.00 per month to over $250.00 per month without apparent cause." ECF No. 1 at ¶ 50–52.

Defamation, whether through slander or libel, requires a showing of: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (1977). Ms. McKinney has made no such allegation against Verizon.

Ms. McKinney's response to Verizon's motion to dismiss clarifies that she is claiming Verizon's actions violated a legal duty owed to her. The Complaint alleges that Verizon's refusal to inform law enforcement of VBA's intentional acts and "violations of Federal and state law" have caused her to be homeless and unable to find meaningful professional work as an attorney." ECF No. 1 at ¶ 55. However, this is far too conclusory to satisfy Rule 8 of the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Ms. McKinney's response identifies four specific statutes she believes Verizon violated. But three of these statutes are parts of criminal codes that do not provide private rights of action. *See* 18 U.S.C. §§ 4, 2261A; Colo. Rev. Stat. § 18-13-125. The fourth statute creates a civil cause of action under Colorado law against a person who commits unauthorized trading in telephone records, which is defined by statute as occurring when a person:

>   (a) Knowingly procures or attempts to procure a telephone record;
>   (b) Knowingly sells, buys, offers to sell, or offers to buy a telephone record;
>   (c) Possesses a telephone record with the intent to use such record, or information contained in such record, to harm another person; or
>   (d) Receives a telephone record of a resident of Colorado knowing that such record was obtained without lawful authorization or by fraud or deception.

Colo. Rev. Stat. §§ 13-21-122.5, 18-13-125. Once again, Ms. McKinney has made no such allegations against Verizon.

Therefore, Ms. McKinney's claims against Verizon must be dismissed as well.

## CONCLUSION

The Court has taken Ms. McKinney's allegations seriously, but the facts alleged do not sufficiently support her legal claims for relief. Going forward, however, I am sincerely concerned that Ms. McKinney says she "has never properly been neurologically evaluated after being shot in the head." ECF No. 22 at 2. Head injuries, however caused, are serious and might not simply fix themselves. Instead, they can present latent cognitive and psychological problems that get worse without professional help. I recommend that treatment, not more futile litigation, should be Ms. McKinney's top priority.

## ORDER

1. Defendant United States' Motion to Dismiss [ECF No. 8], Defendant Memorial Hospital's Motion to Dismiss [ECF No. 10], and Verizon, Inc.'s Motion to Dismiss [ECF No. 11] are GRANTED. The case and all claims therein are dismissed with prejudice, each party to bear her and its own costs.

2. Plaintiff's Combined Response to Defendant U.S. Motion to Dismiss and Motion for Summary Judgment for Slander and Libel Claims [ECF No. 12], Plaintiff's Response to Memorial Hospital's Motion to Dismiss or, in the Alternative, Request for Review of

Certification Requirement and Leave to Amend [ECF No. 13], Defendant United States' Motion to Strike Plaintiff's Motion for Summary Judgment for Slander and Libel Claims [ECF No. 16], Defendant Memorial Hospital's Motion to Strike Plaintiff's Request for Review of Certification Requirement and Leave to Amend [ECF No. 18], Plaintiff's Motion for Summary Judgment for Slander and Libel Claims Against Defendant U.S. [ECF No. 22], Plaintiff's Motion for Sanctions Against Attorney for Defendant U.S. [ECF No. 27], Defendant United States' Motion to Stay Proceedings and Vacate Scheduling Conference [ECF No. 30], Plaintiff's Motion to Restrict Public Access to, or in the Alternative, Redact Portions of Court Documents and Exhibits [ECF No. 32], Plaintiff's Motion for Correction [ECF No. 37], and Defendant United States' Motion for Extension of Time to Respond to Plaintiff's Motion for Sanctions and to Respond to Plaintiff's Motion for Correction [ECF No. 40] are MOOT.

DATED this 23rd day of November, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge